**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JEAN LU, GIOVANNA BOLANOS, and CLAUDE GRANT individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiffs, | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| v. | |
| BANK OF AMERICA, N.A., | **Jury Trial Demanded** |
| Defendant. | |

Plaintiffs Jean Lu, Giovanna Bolanos and Claude Grant ("Plaintiffs") bring this Class and Collective Action Complaint against Defendant Bank of America, N.A. ("Bank of America") on behalf of themselves and all others similarly situated, stating and alleging the following:

## NATURE OF THE ACTION

1.      In response to the COVID-19 outbreak, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), which allocated significant funding for loans to small businesses affected by the pandemic and resulting economic downturn. This loan measure—dubbed the Paycheck Protection Program (PPP)—was to be administered by the federal Small Business Administration in conjunction with the Department of the Treasury.

2.      But the federal government lacked the capacity to administer this program on its own. Instead, it turned to large financial institutions like Bank of America, which had the existing infrastructure to process large numbers of loans.

3.      For companies like Bank of America, the task of processing and disbursing loans through the PPP program promised to be a highly profitable one. Financial institutions were paid a percentage of each loan they administered on a sliding scale; 5% of each loan up to $350,000 and 1% of each loan over $2 million.

1

4.     But for the loan officers and consultants required to work on the program, prospects were much less rosy. Most of these workers were paid on an hourly basis and made much of their income through commissions on loans they originated and processed. But PPP loans promised no such commissions, and instead would take the workers' time away from more profitable, commissioned work.

5.     To induce workers to remain with Bank of America and induce them to work steadily and efficiently on the company's lucrative PPP loan program and to replace otherwise profitable commissions for loan origination, Bank of America offered nondiscretionary incentive pay related to processing PPP loans (hereafter "nondiscretionary PPP incentive pay"). For some, this nondiscretionary PPP incentive pay was calculated based on their average earnings, including all commissions, for the three months preceding the start of the pandemic. For others, it took the form of a straightforward increase to their usual hourly pay rate. And on occasion, the company offered premium pay rates to employees who worked arduous extra hours on certain days contributing to the PPP loan program.

6.     But while this nondiscretionary PPP incentive pay rate was used to calculate the workers' regular hour earnings, it was not reflected in their overtime pay. Instead, overtime was paid at a rate of one-and-a-half times the worker's *lower, pre-pandemic* base hourly rate, without including the nondiscretionary PPP incentive pay. This meant that workers were not paid overtime based on their actual regular rate of pay for a given workweek, but rather were paid overtime calculated from a lower amount.

7.     This is in contrast to how the company treated the loan officers' commissions both before and after the PPP program.  For example, at the end of each month, the loan officers' commission pay is retroactively added to the regular rate of pay for any workweeks where the

given loan officer worked more than 40 hours.  However, for this nondiscretionary PPP incentive pay—that was intended to approximate and replace commission pay—Bank of America refused to include it in the regular rate of pay.

8.      In addition, some employees who were classified as exempt and not entitled to overtime pay were assigned to work on the PPP loan program, which consisted of non-exempt, ministerial work relating to the processing of loan applications. Those employees were misclassified for the duration of their work on the PPP loan program, and as a result, were not paid any overtime premiums for their substantial overtime work.

9.      As a result of this practice, workers who stepped up to the critical work of administering the PPP loan program were short-changed the wages they were owed. As explained below, many Bank of America employees, including Plaintiffs, worked long hours and significant overtime throughout the pandemic to ensure the nation's small businesses had the resources they needed to stay afloat. This suit seeks to recover for them the wages and penalties they are owed under the law.

## PARTIES, JURISDICTION, AND VENUE

10.     Plaintiff Jean Lu is a citizen of California who at all times relevant to this suit worked for Bank of America within the state of California. Her written Consent to Join this case is attached and incorporated as **Exhibit 1**.

11.     Plaintiff Giovanna Bolanos is a citizen of California who at all times relevant to this suit worked for Bank of America within the state of California. Her written Consent to Join this case is attached and incorporated as **Exhibit 2**.

12.     Plaintiff Claude Grant is a citizen of Florida who at all times relevant to this suit worked for Bank of America within the state of California. His written Consent to Join this case is attached and incorporated as **Exhibit 3.**

13.     Defendant Bank of America, N.A. is a national association having its principal place of business in North Carolina.

14.     This Court has subject matter jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a proposed class action in which: (1) there are at least 100 class members; (2) the combined claims of class members exceed $5,000,000.00, exclusive of interest, attorneys' fees, and costs; and (3) Bank of America and at least one class member are citizens of different states. This Court also has subject matter jurisdiction over the Fair Labor Standards Act claims of Plaintiffs and all others similarly situated pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and over all related state law claims pursuant to 28 U.S.C. § 1367.

15.     This Court has personal jurisdiction over Bank of America because it is authorized to do business and regularly conducts business in California, and the claims of Plaintiffs and the Class they seek to represent arose within the state of California.

16.     Venue is proper in this district under 28 U.S.C. § 1391(b) because Bank of America resides within this district, and a substantial part of the events giving rise to the claims at issue occurred in this district, as one or more Plaintiffs and putative class members performed work subject to this suit within the boundaries of this district.

## FACTS RELEVANT TO ALL CLAIMS

17.     Bank of America began administering and processing PPP loans on or about April 1, 2020, whereupon the company started offering loan officers, loan consultants, and others

nondiscretionary PPP incentive pay for work on the program. Upon information and belief, this program and incentive pay continued until approximately May 2021.

18.     For the first few weeks of the PPP program, Bank of America demonstrated that it understood how to pay its loan officers in compliance with the Fair Labor Standards Act and the California Labor Code by including nondiscretionary PPP incentive pay as part of these workers' regular rates when they worked over 40 hours in a workweek.

19.     That changed on or about April 27, 2020. At that point, the company decided that these new rates were "inflated," at least for the purposes of calculating overtime. It then reverted to using employees' earlier base hourly rate that was in effect before the PPP loan program began when determining the employee's "regular rate" when calculating their compensation for any overtime hours worked.

20.     As a matter of law, and as Bank of America was fully aware, that determination was incorrect. Instead, an employee's regular rate must be calculated by including all renumeration paid to an employee (subject to statutory exceptions not relevant here) actually paid the employee for each separate workweek. 29 C.F.R. § 778.108.

21.     Nondiscretionary PPP incentive pay was often denoted on employees' paystubs as a miscellaneous nondiscretionary award ("Misc NonDiscr Awrd"). These amounts were excluded from the employee's regular rate of pay when calculating overtime.

22.     Nondiscretionary PPP incentive pay included an increased hourly rate for regular, non-overtime hours worked. Upon information and belief, for many employees, this rate was calculated based on an average of their total compensation, including all commissions, in addition to hourly earnings, for the months of December 2019 through February 2020.

23.    Nondiscretionary PPP incentive pay also included premium rates offered for extra work on certain days for work on the program. For instance, during the summer of 2020, some employees were offered premium pay doubling their hourly rate for extra and arduous work spent on the PPP loan program. And, for example, for the weekend of May 9-11, 2020, Bank of America offered employees three times their hourly base pay rate for work on the PPP loan program.

24.    This premium pay was intended to induce employees to perform more work on the PPP loan program, work that was difficult, unfamiliar, arduous, and (due to the lack of commissions) relatively unremunerative for employees, but highly lucrative for Bank of America. The premium pay for extra work was available only for work on the PPP loan program, and only during certain set times. It was not limited to non-exempt hourly workers, as salaried employees were eligible for similar incentive payments.

25.    Neither form of nondiscretionary PPP incentive pay—the hourly rate increase or the premium pay for extra work—were included in employees' regular rates when Bank of America calculated and paid their overtime.

26.    By failing to include nondiscretionary PPP incentive pay—a significant part of an employee's total weekly earnings—Bank of America violated the law and miscalculated its employees' regular rates of pay.

27.    This was compounded by the fact that Bank of America required these employees to perform extraordinary amounts of overtime, often exceeding 70 hours of work per week. Thus, failing to include this compensation in the workers' regular rate of pay meant that they were significantly underpaid what they were owed.

28.     As a result, Bank of America employees earning nondiscretionary PPP incentive pay were underpaid for each hour of overtime they worked.

29      Plaintiff Claude Grant was an hourly, non-exempt loan consultant who worked for Bank of America in the state of California from 2019 through March 2022. He worked on the PPP loan program and received nondiscretionary PPP incentive pay that was excluded from his regular rate when calculating and paying overtime.

30      Throughout the PPP loan program, Plaintiff Grant worked a substantial amount of overtime hours, often more than thirty (30) in a workweek. These overtime hours were paid at a rate of one-and-a-half times his earlier, lower hourly rate in effect prior to the PPP loan program and did not include his nondiscretionary PPP incentive pay.

31.     For instance, during the two-week pay period from May 11, 2020 through May 24, 2020, Plaintiff Grant worked at least 33.766663 overtime hours. This work was paid at a rate of $32.46 per hour, or one-and-a-half times his base hourly rate of $21.64 per hour. Bank of America did not include the nondiscretionary PPP incentive pay he earned during that period as part of his regular rate, and as a result, underpaid him for his overtime hours worked.

32.     Plaintiff Giovanna Bolanos was an hourly, non-exempt mortgage lending officer who worked for Bank of America in the state of California from 2003 through July 2021. She worked on the PPP loan program and received nondiscretionary PPP incentive pay that was excluded from her regular rate when calculating and paying overtime.

33.     Throughout the PPP loan program, Plaintiff Bolanos worked a substantial amount of overtime hours, often more than thirty (30) in a workweek. These overtime hours were paid at a rate of approximately one-and-a-half times her earlier, lower hourly rate in effect prior to the PPP loan program and did not include her nondiscretionary PPP incentive pay.

34.     For instance, during the two-week pay period from April 27, 2020 through May 10, 2020, Plaintiff Bolanos worked at least 17.967 overtime hours. This work was paid at a rate of $30.35 per hour, only slightly more than one-and-a-half times her base hourly rate of $20 per hour. Bank of America did not include the nondiscretionary PPP incentive pay she earned during that period as part of her regular rate, and as a result, underpaid her for her overtime hours worked.

35.     Plaintiff Jean Lu was a senior lending officer who worked for Bank of America in the state of California from 2017 through July 2021. She worked on the PPP loan program and received nondiscretionary PPP incentive pay.

36.     Plaintiff Lu was classified as exempt and not paid overtime during her tenure with Bank of America. This classification became erroneous upon her assignment to work on the PPP loan program, which consisted chiefly of loan processing and other non-exempt job duties. As a result of this misclassification, Plaintiff Lu was not paid any overtime premiums for her work on the PPP loan program. Throughout the PPP loan program, Plaintiff Lu worked a substantial amount of unpaid overtime hours on a daily and weekly basis.

37.     As a result of Bank of America improperly using lower rates when calculating overtime, and in some cases, failing to pay overtime at all, Plaintiffs and all similarly situated employees were paid less than the amount to which they were entitled by law for each hour of overtime worked.

38.     Further, on or about June 2023, Plaintiffs Bolanos and Grant were sent letters from Bank of America informing them that she had been underpaid for certain months in 2021 due to a calculation error and enclosing a check for certain unpaid wages. This make-up pay was sent without further notice or any explanation as to how it was calculated. Upon information and

belief, it did not include all wages, penalties, liquidated damages, interest, and other amounts owed under California law.

39.     Additionally, and as a consequence of these violations, Plaintiffs and all similarly situated employees were also not provided accurate wage statements and were not timely paid the full amounts owed them as required by the California Labor Code.

## ALLEGATIONS APPLICABLE TO THE FLSA

40.     At all times material herein, Plaintiffs and all others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

41.     The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.  29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1). Bank of America is subject to the minimum wage and overtime pay requirements of the FLSA because it operates an enterprise engaged in interstate commerce and its employees are engaged in commerce.

42.     During all relevant times to this action, Bank of America acted as the "employer" of Plaintiffs and all similarly situated employees within the meaning of the FLSA.  29 U.S.C. § 203(d).

43.     During all times relevant to this action, Plaintiffs and all similarly situated employees were Bank of America's "employees" within the meaning of the FLSA.  29 U.S.C. § 203(e).

44.     Pursuant to the FLSA, employees are entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek.  29 U.S.C. § 207(a).

45.     Although the FLSA contains some exceptions (or exemptions) from the overtime requirements, none of those exceptions (or exemptions) applies here.

46.     Plaintiffs and all similarly situated employees are victims of uniform and unlawful compensation policies.

47.     Plaintiffs and all similarly situated employees are entitled to damages equal to the mandated minimum wage and overtime premium pay within the three (3) years preceding the filing of the Class and Collective Action Complaint, plus periods of equitable tolling, because Bank of America acted willfully and knew, or showed reckless disregard of whether its conduct was prohibited by the FLSA. Bank of America's policies alleged herein constituted a willful violation of the FLSA in that, *inter alia*:

- At the start of the PPP loan program, Bank of America initially calculated and paid overtime correctly. From approximately April 1, 2020 to April 27, 2020, Bank of America included nondiscretionary PPP incentive pay in its employees' regular rates when paying overtime. However, on a conference call with employees working on the PPP loan program, Bank of America incorrectly and misleadingly claimed that these overtime rates were "inflated", and stated that starting April 27, 2020, rates used to calculate overtime would revert to the employees' lower base hourly rate in effect prior to the start of the program;

- Bank of America attempted to conceal the true nature of its overtime pay practices relating to employees working on the PPP loan program, including by disseminating opaque, confusing, and misleading communications and policies concerning how overtime was calculated and paid, by failing to explain to employees how their pay was calculated, and by providing paystubs and records that failed to convey how the amount paid was calculated;

- To further this deception, Bank of America took pains to ensure that its overtime pay practices for employees working on the PPP loan program were not put in writing. For instance, during the aforementioned conference call discussing compensation and payment of overtime for the PPP loan program, Bank of America management told employees "we're not circulating this in writing, so do listen carefully." On other occasions, employees were explicitly instructed not to forward emails regarding compensation for work on the PPP loan program to anyone outside the Bank of America organization; and

- Bank of America calculated portions of the employees' nondiscretionary PPP incentive pay based on the employees' total compensation, including all commissions, from the months of December 2019 to February 2020, and this pay was intended to compensate the employees for their commission earnings, which would not be available for their work on the PPP loan program. Bank of America knew that commission earnings were unambiguously required to be included in its employees' regular rate when calculating overtime under the FLSA.

48.     Bank of America has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b).  Alternatively, should the Court find Bank of America acted in good faith or with reasonable grounds in failing to pay overtime compensation, Plaintiffs and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

49.     As a result of these violations of the FLSA's overtime pay provisions, compensation has been unlawfully withheld by Bank of America from Plaintiffs and all similarly situated employees.  Accordingly, pursuant to 29 U.S.C. § 216(b), Bank of America is liable for the unpaid overtime premium pay along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

## ALLEGATIONS APPLICABLE TO THE CALIFORNIA LABOR CODE

50.     At all times relevant, Plaintiffs and all similarly situated employees have been entitled to the rights, protections, and benefits provided under the California Labor Code. Cal. Lab. Code § 1 *et seq*.

51.     During all times relevant to this action, Bank of America was the "employer" of Plaintiffs and the class members within the meaning of California law, or otherwise subject to its statutory provisions. Cal. Lab. Code § 1132.2.

52.     During all times relevant to this action, Plaintiffs and the class members were Bank of America's "employees" within the meaning of California law. Cal. Lab. Code § 1132.4.

53.     Plaintiffs and the class members are victims of uniform (and uniformly deficient) compensation and notice policies in violation of California law.

54.     Plaintiffs and the Class are entitled to recover all damages, costs, attorney fees, statutory penalties, liquidated damages, and other recoverable items provided pursuant to the California Labor Code.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

55.     Plaintiffs brings Count I, the FLSA claim arising out of Bank of America's overtime violations, as an "opt in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and the following collective action class:

> All current and former non-exempt Bank of America employees who received any nondiscretionary PPP incentive payments, however denoted, that were not included in their regular rate of pay in workweeks for which they worked more than forty (40) hours, and/or employees who were not paid overtime at all for their work on the PPP loan program within the state of California at any time from three (3) years prior to the filing of the initial Class and Collective Action Complaint to the present, plus any applicable tolling period(s).

Plaintiffs' FLSA claim may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

56.     Plaintiffs, individually and on behalf of all others similarly situated, seek relief on a collective basis challenging Bank of America's above-described FLSA violations.  The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from Bank of America's records, and potential opt-in plaintiffs may easily and quickly be notified of the pendency of this action.

57.     Plaintiffs bring Count II (Unpaid Overtime in Violation of the California Labor Code), Count III (Failure to Furnish Wage Statements in Violation of the California Labor Code), Count IV (Failure to Maintain Accurate Wage Records in Violation of the California

Labor Code), Count V ((Failure to Pay Timely Wages in Violation of the California Labor Code), Count VI (Failure to Pay All Wages Due to Former Employees in Violation of the California Labor Code), and Count VII (Violation of the California Unfair Competition Law) pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4). Plaintiffs bring this action on behalf of themselves and all others similarly situated, and seeks to represent the following class:

> All current and former non-exempt Bank of America employees who received any nondiscretionary PPP incentive payments, however denoted, that were not included in their regular rate of pay in workweeks for which they worked more than forty (40) hours, workweeks for which they worked seven (7) consecutive days, or workdays for which they worked more than eight (8) hours, and/or employees who were not paid overtime at all for their work on the PPP loan program within the state of California during the relevant limitations period.

Excluded from the Class are Bank of America, any entity in which Bank of America has a controlling interest, any of the officers or directors of Bank of America, the legal representatives, heirs, successors, and assigns of Bank of America, anyone employed with Plaintiffs' counsel's firms, and any Judge to whom this case is assigned, and his or her immediate family.

58.    Plaintiffs' California state law claims (Counts II-VII) described in detail below, satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

59.    The class numbers in the hundreds, if not thousands, of persons.  As a result, joinder of all class members in a single action is impracticable.  Class members may be informed of the pendency of this action through regular mail, e-mail, and/or posting of an approved notice.

60.    There are common questions of fact and law to the classes that predominate over any questions affecting only individual class members.  The questions of law and fact common to the classes arising from Bank of America's actions include, without limitation, the following:

- Whether Bank of America violated the California Labor Code when it excluded nondiscretionary PPP incentive payments from Plaintiffs and similarly situated employees' regular rates of pay;

- Whether Bank of America violated the California Labor Code when it calculated and paid Plaintiffs and similarly situated employees' overtime pay as 1.5 times their lower, pre-PPP loan program rates of pay;

- Whether Bank of America's wage notice forms accurately listed all required information, including but not limited to the employee's regular hourly rate and overtime rate of pay;

- Whether Bank of America provided wage statements accurately listing all required information, including but not limited to the employee's regular hourly rate and overtime rate of pay;

- Whether Bank of America timely paid all wages due to Plaintiffs and similarly situated employees as required by law; and

- Whether Bank of America's conduct and practices were willful and lacking a good faith legal basis.

61.    The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.  Plaintiffs' claims are typical of those of the respective classes in that class members have been employed in the same or similar positions as Plaintiffs and were subject to the same or similar unlawful pay practices as Plaintiffs.  A class action is the superior method for the fair and efficient adjudication of Plaintiffs' claims.  Bank of America has

acted or refused to act on grounds generally applicable to the class.  The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Bank of America, and/or substantially impair or impede the ability of class members to protect their interests.  Plaintiffs are adequate representatives because they are members of the classes they seek to represent, and their interests do not conflict with the interests of the members of those classes.  The interests of the members of the classes will be fairly and adequately protected by Plaintiffs and their undersigned counsel, who are experienced prosecuting complex wage and hour, employment, and class action litigation.

62.     Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy.  It would be impracticable and undesirable for each member of the classes who suffered harm to bring a separate action.  In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in consistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

63.     Plaintiffs and other similarly situated employees hereby invoke Emergency Rule 9(a) of the Judicial Council of California, tolling the statute of limitations for their claims for the period of April 6, 2020 to October 1, 2020.

### COUNT I - FLSA (Unpaid Overtime Wages)
**Arising Out of Bank of America's Regular Rate Miscalculation and Exemption Misclassification Policies**

64.     Plaintiffs re-allege the allegations set forth above.

65.    Bank of America violated the FLSA by failing to pay Plaintiffs and other similarly situated employees for all overtime hours worked at one and one-half times the regular rate for all hours worked in excess of forty hours in a workweek.

66.    Specifically, the FLSA requires that employees are paid one and one-half times their "regular rate" of pay.  The "regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."  29 C.F.R. § 778.109.

67.    In calculating Plaintiffs' and other similarly situated employees' overtime pay, Bank of America improperly excluded a significant item of the employees' total compensation for the workweek, namely, their PPP incentive pay. As a result, Plaintiffs and other similarly situated employees' overtime pay was not based on the proper regular rate of pay under the FLSA, but instead calculated from a lower amount.

68.    Additionally, other employees were misclassified as exempt from the FLSA's overtime requirements, even though the PPP loan program consisted mostly or entirely of non-exempt job duties, and as a result, were not paid any overtime at all.

69.    Due to these practices of miscalculation and misclassification, Plaintiffs and other similarly situated employees were paid less than required under the FLSA for each overtime hour worked.

70.    Bank of America has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay pursuant to 29 U.S.C. §

216(b).  Alternatively, should the Court find Bank of America did act with good faith and reasonable grounds in failing to pay overtime pay, Plaintiffs and other similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

WHEREFORE, on Count I of this Class and Collective Action Complaint, Plaintiffs and all similarly situated employees demand judgment against Bank of America and prays this Court:

a.   Issue notice to all similarly situated employees of Bank of America informing them of their right to file consents to join the FLSA portion of this action;

b.   Award Plaintiffs and all similarly situated employees damages for unpaid overtime wages under 29 U.S.C. § 216(b);

c.   Award Plaintiffs and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

d.   Award Plaintiffs and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

e.   Award Plaintiffs and all similarly situated employees attorneys' fees and costs under 29 U.S.C. § 216(b);

f.   Award Plaintiffs and all similarly situated employees such other relief as the Court deems fair and equitable.

g.

**COUNT II – California Labor Code §§ 510, 1194, 1198, and IWC Wage Order No. 4-2001, § 3 (Unpaid Overtime Wages)**
**Arising Out of Bank of America's Regular Rate Miscalculation and Exemption Misclassification Policies**

71.   Plaintiffs re-allege the allegations set forth above.

72.   IWC Wage Order No. 4-2001, § 3 applies to Plaintiff and Class members'

employment with Bank of America, and no exemptions apply.

73.     California Labor Code § 1198 provides that it is unlawful to employ persons for longer than the hours set by the IWC without just compensation.

74.     Pursuant to California Labor Code §§ 510, 1194, and 1198, in conjunction with IWC Wage Order No. 4-2001, an employer is required to pay one-and-a-half times an employee's regular rate of pay for working time:

        a.     Over forty (40) hours in a workweek;

        b.     Over eight (8) hours in a workday; and

        c.     During the first eight (8) hours worked on the seventh day of any workweek.

75.     Additionally, pursuant to California Labor Code §§ 510, 1194, and 1198, in conjunction with IWC Wage Order No. 4-2001, an employer is required to pay two times an employee's regular rate of pay for working time:

        a.     Over twelve (12) hours in a workday; and

        b.     Over eight (8) hours on any seventh day of a workweek.

76.     Plaintiffs and similarly situated employees regularly worked hours for which Bank of America was obligated to pay them one-and-a-half times and two times their regular rate of pay, but Bank of America failed to do so.

77.     In calculating Plaintiffs' and other similarly situated employees' overtime pay, Bank of America improperly excluded a significant item of the employees' total compensation for the workweek, namely, their PPP incentive pay. As a result, Plaintiffs and other similarly situated employees' overtime pay was not based on the proper regular rate of pay under California law, but instead calculated from a lower amount.

78.     Additionally, other employees were misclassified as exempt from the California Labor Code's overtime requirements, even though the PPP loan program consisted mostly or entirely of non-exempt job duties, and as a result, were not paid any overtime at all.

79.     Due to these practices of miscalculation and misclassification, Plaintiffs and other similarly situated employees were paid less than required under the California Labor Code for each overtime hour worked.

80.     Plaintiffs and other similarly situated employees are entitled to recover unpaid overtime wages in amounts to be proved at trial, plus interest, attorneys' fees, and costs pursuant to California Labor Code § 218.5, 1194, 1197.1, and 558.

WHEREFORE, on Count II of this Class and Collective Action Complaint, Plaintiffs and all similarly situated employees demand judgment against Bank of America and prays this Court:

a.   Certify the state law claim set forth in Count II above as a class action pursuant to Fed. R. Civ. P. 23;

b.   Award Plaintiffs and the Class damages for the amount of unpaid wages due;

c.   Award Plaintiffs and the Class pre-judgment and post-judgment interest as provided by law;

d.   Award Plaintiffs and the Class attorneys' fees and costs; and

e.   Award Plaintiffs and the Class such other relief as the Court deems fair and equitable.

### COUNT III – California Labor Code §§ 226, 1174, and 1175
**Arising Out of Bank of America's Failure to Furnish Accurate Wage Statements**

81.     Plaintiffs re-allege the allegations set forth above.

82.     California Labor Code § 226 requires employers to provide employees, on each payday, itemized statements showing, among other things: (1) gross wages earned, (2) total

hours worked by the employee, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee, (8) the name and address of the legal entity that is the employer and, (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

83.     Bank of America willfully violated its obligations under California law, including those under California Labor Code §§ 226(a), *et seq.*, by knowingly and intentionally failing to provide Plaintiff and the Class with timely and accurate wage statements.

84.     Bank of America also violated California Labor Code §§ 1174 and 1175 by knowingly, intentionally, and unlawfully failing to provide Plaintiff and the Class with timely and accurate wage statements in violation of California Labor Code § 226.

85.     For such violations, Bank of America is liable for the penalties described in Labor Code §§ 226(e), 226.3, 1174.5, and 558.

86.     Plaintiff and the Class are entitled to recovery of the greater of their actual damages or $50 for the initial pay period in which a violation occurred and $100 per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty per employee of $4,000. Plaintiff and the Class are entitled to an award of costs and reasonable attorney's fees under California Labor Code § 226(e) and additional relief as described herein and permitted by law.

WHEREFORE, on Count III of this Class and Collective Action Complaint, Plaintiffs and all similarly situated employees demand judgment against Bank of America and prays this Court:

a.     Certify the state law claim set forth in Count III above as a class action pursuant to Fed. R. Civ. P. 23;

b.     Award Plaintiffs and the Class statutory damages and penalties as provided by law;

c.     Award Plaintiffs and the Class pre-judgment and post-judgment interest as provided by law;

d.     Award Plaintiffs and the Class attorneys' fees and costs as provided by law; and

e.     Award Plaintiffs and the Class such other relief as the Court deems fair and equitable.

### COUNT IV – California Labor Code §§ 226, 1174, 1175, and IWC Wage Order No. 4-2001, § 7
**Arising Out of Bank of America's Failure to Maintain Required Records**

87.     Plaintiffs re-allege the allegations set forth above.

88.     As part of Bank of America's unlawful overtime pay policies and practices set forth herein, Bank of America knowingly and intentionally failed to maintain records as required by California Labor Code §§ 226 and 1174, and IWC Wage Order 4-2001 § 7, including but not limited to applicable rates of pay for all hours worked, and accurate itemized wage statements.

89.     As a result of Bank of America's unlawful actions and omissions, Plaintiffs and other similarly situated employees have been damaged in an amount to be proved at trial and are entitled to all wages due and interest thereon. Additionally, Plaintiff and other similarly situated employees are entitled to all available statutory penalties, including but not limited to civil penalties pursuant to California Labor Code §§ 226(e), 226.3, and 1174.5, and an award of costs,

expenses, and reasonable attorneys' fees, including but not limited to those provided by California Labor Code § 226(e).

WHEREFORE, on Count IV of this Class and Collective Action Complaint, Plaintiffs and all similarly situated employees demand judgment against Bank of America and prays this Court:

      a.   Certify the state law claim set forth in Count IV above as a class action pursuant to Fed. R. Civ. P. 23;

      b.   Award Plaintiffs and the Class statutory damages and penalties as provided by law;

      c.   Award Plaintiffs and the Class pre-judgment and post-judgment interest as provided by law;

      d.   Award Plaintiffs and the Class attorneys' fees and costs as provided by law; and

      e.   Award Plaintiffs and the Class such other relief as the Court deems fair and equitable.

## <u>COUNT V – California Labor Code § 204</u>
### Arising Out of Bank of America's Failure to Pay Timely Wages

90.     Plaintiffs re-allege the allegations set forth above.

91.     Pursuant to California Labor Code § 204, for all labor performed between the 1st and 15th days of any calendar month, Bank of America was required to pay their nonexempt employees between the 16th and 26th day of the month during which the labor was performed. California Labor Code § 204 also provides that for all labor performed between the 16th and 26th days of any calendar month, Bank of America was required to pay their nonexempt employees between the 1st and 10th day of the following calendar month. In addition, California

Labor Code § 204 provides that all wages earned for labor in excess of the normal work period shall be paid no later than the payday of the next regular payroll period.

92.     Bank of America knowingly and willfully failed to pay Plaintiffs and other similarly situated employees all the wages they earned when due as required by California Labor Code § 204.

93.     Pursuant to California Labor Code § 210, failure to pay the wages of each employee as provided in California Labor Code § 204 will subject an employer to a civil penalty of: (1) one hundred dollars ($100) for each failure to pay each employee for each initial violation; and (2) two hundred dollars ($200) for each failure to pay each employee, plus twenty-five percent (25%) of the amount unlawfully withheld, for each subsequent violation.

94.     Bank of America's miscalculation of its employees' overtime rates and failure to pay all overtime owed as described herein violates California Labor Code § 204.

95.     Additionally, on or about June 2023, Plaintiffs Bolanos and Grant were sent letters from Bank of America informing them that she had been underpaid for certain months in 2021 due to a calculation error and enclosing a check for those unpaid wages. However, this payment did not include all late payment penalties required by law, including but not limited to those provided by California Labor Code § 210.

96.     Upon information and belief, other similarly situated employees suffered violations of the same kind.

97.     As a result of these violations, Plaintiffs and other similarly situated employees have been damaged in an amount to be proved at trial. Therefore, pursuant to California Labor Code §§ 200, 210, 226, 558, 1194, 1197.1, and other applicable provisions under the Labor Code and IWC Wage Orders, Plaintiffs and other similarly situated employees are entitled to recover

the unpaid balance of wages owed to them by Bank of America, plus interest, penalties, attorneys' fees, expenses, and costs of suit.

WHEREFORE, on Count V of this Class and Collective Action Complaint, Plaintiffs and all similarly situated employees demand judgment against Bank of America and prays this Court:

a.   Certify the state law claim set forth in Count V above as a class action pursuant to Fed. R. Civ. P. 23;

b.   Award Plaintiffs and the Class damages for the amount of unpaid and untimely wages due, along with all statutory damages and penalties;

c.   Award Plaintiffs and the Class pre-judgment and post-judgment interest as provided by law;

d.   Award Plaintiffs and the Class attorneys' fees and costs; and

e.   Award Plaintiffs and the Class such other relief as the Court deems fair and equitable.

### COUNT VI – California Labor Code § 203
### Arising Out of Bank of America's Failure to Pay All Wages
### Due to Former Employees

98.    Plaintiffs re-allege the allegations set forth above.

99.    Pursuant to California Labor Code §§ 201, 202, and 203, employers are required to pay all earned and unpaid wages to an employee whose employment is terminated for any reason.

100.    California Labor Code § 201 mandates that if an employer discharges an employee, the employee's wages accrued and unpaid at the time of discharge are due and payable immediately.

25

101.    California Labor Code § 202 mandates that if an employee quits his employment, the employer must pay all wages accrued and unpaid at the time the employee quits within 72 hours after the employee quits, unless the employee provided at least 72 hours' notice of his intention to quit, in which case the employee is entitled to his wages at the time of quitting.

102.    California Labor Code § 203 provides that if an employer willfully fails to pay any wages owed to an employee in accordance with Labor Code §§ 201 and 202, the employer is liable for waiting time penalties in the form of continued compensation to the employee at the same rate for up to 30 workdays.

103.    As alleged herein, and as a result of its unlawful miscalculation and failure to pay all overtime wages owed, Bank of America willfully failed to pay accrued and unpaid wages owed to Plaintiffs and other similarly situated employees whose employment has terminated, in accordance with California Labor Code §§ 201 and 202.

104.    Additionally, on or about June 2023, Plaintiffs Bolanos and Grant were sent letters from Bank of America informing them that she had been underpaid for certain months in 2021 due to a calculation error and enclosing a check for those unpaid wages. However, this payment did not include all late payment penalties required by law, including but not limited to those provided by California Labor Code § 203.

95.    Upon information and belief, other similarly situated employees suffered violations of the same kind.

106.    As a result, Plaintiffs and other similarly situated employees are entitled to all statutory penalties, including the waiting time penalties set forth in California Labor Code § 203, together with interest thereon, as well as all other available remedies.

WHEREFORE, on Count VI of this Class and Collective Action Complaint, Plaintiffs and all similarly situated employees demand judgment against Bank of America and prays this Court:

     a.   Certify the state law claim set forth in Count VI above as a class action pursuant to Fed. R. Civ. P. 23;

     b.   Award Plaintiffs and the Class damages for the amount of unpaid and untimely wages due, along with all statutory damages and penalties;

     c.   Award Plaintiffs and the Class pre-judgment and post-judgment interest as provided by law;

     d.   Award Plaintiffs and the Class attorneys' fees and costs; and

     e.   Award Plaintiffs and the Class such other relief as the Court deems fair and equitable.

<u>**COUNT VII – California Labor Code §§ 551, 552**</u>
**Arising Out of Bank of America's Failure to Provide One Day's Rest in Seven**

107.    Plaintiffs re-allege the allegations set forth above.

108.    Pursuant to California Labor Code § 551, every employee is entitled to one day's rest in seven. And pursuant to California Labor Code § 552, an employer may not cause its employees to work more than six days in seven.

109.    Due to the overwhelming volume of work required to administer Bank of America's PPP loan program, Plaintiffs and other similarly situated employees frequently worked all seven days in a workweek when the PPP loan program was in effect.

110.    Bank of America did not apprise Plaintiffs and other similarly situated employees of their entitlement to a day of rest each workweek.

111.    Bank of America also failed to maintain absolute neutrality as to the exercise of the right of Plaintiffs and other similarly situated employees by assigning work and enforcing policies and practices that required Plaintiffs and other similarly situated employees to work all seven days in a workweek.

112.    As a result, Plaintiffs and other similarly situated employees are entitled to all statutory penalties, including those set forth in California Labor Code § 558, together with interest thereon, as well as all other available remedies.

WHEREFORE, on Count VII of this Class and Collective Action Complaint, Plaintiffs and all similarly situated employees demand judgment against Bank of America and prays this Court:

  f.  Certify the state law claim set forth in Count VII above as a class action pursuant to Fed. R. Civ. P. 23;

  g.  Award Plaintiffs and the Class statutory damages and penalties as provided by law;

  h.  Award Plaintiffs and the Class pre-judgment and post-judgment interest as provided by law;

  i.  Award Plaintiffs and the Class attorneys' fees and costs as provided by law; and

  j.  Award Plaintiffs and the Class such other relief as the Court deems fair and equitable.

<b><u>COUNT VIII – Cal. Bus. & Prof. Code § 17200, <i>et seq</i>.</u></b><br><b>Arising Out of Bank of America's Unfair Business Practices</b>

113.    Plaintiffs re-allege the allegations set forth above.

114.    California's Business and Professions Code § 17200, *et seq*., the California Unfair Competition Law (UCL) prohibits acts of unfair competition, which includes any "unlawful business act or practice."

115.    The policies, acts, and practices described in this Complaint were unlawful business acts and practices because Bank of America's failure to pay overtime wages at the lawful rate, failure to provide accurate and timely wage statements and keep accurate wage records, and failure to timely pay all wages due violate applicable California Labor Code sections, including but not limited to California Labor Code §§ 510, 551, 552, 1194, 1198, 203, 204, 226, 1174, and 1175, binding administrative regulations including IWC Wage Order No. 4-2001, provisions of federal law, including 29 U.S.C. § 207, and other provisions of California common and/or statutory law. Plaintiffs reserve the right to allege additional statutory and common law violations by Bank of America.

116.    The policies, acts, and practices described in this Complaint were also unfair and/or fraudulent business acts and practices because they resulted in Plaintiffs and similarly situated employees being misled and denied pay for wages they earned. Moreover, Bank of America took affirmative steps to conceal its misconduct and mislead its employees into believing they were paid overtime at the correct rate. Said business practices offend established public policy and are immoral, unethical, and unscrupulous or substantially injurious to employees.

117.    Bank of America's violations of California and federal wage and hour laws constitute a business practice because the company's aforementioned acts and omissions were done repeatedly over a significant period of time, and in a systematic manner, to the detriment of Plaintiffs and other similarly situated employees.

118.    Bank of America has avoided payment of overtime wages and other benefits as required by the California Labor Code, the California Code of Regulations, and the applicable IWC Wage Order. Further, Bank of America has failed to record, report, and pay the correct sums of assessment to the state authorities under the California Labor Code and other applicable regulations.

119.    As a result of Bank of America's unfair and unlawful business practices, it has reaped unfair and illegal profits during the class period at the expense of Plaintiff, class members, and members of the public. Defendants should be made to disgorge their ill-gotten gains and to restore them to Plaintiff and class members.

120.    Any reasons, justifications, or motives that Bank of America may offer for the practices described herein are outweighed by the gravity of harm to the victims, including Plaintiffs and other similarly situated employees, the general public, the state of California, and competing firms that comply with overtime payment requirements. These injuries are substantial and are not outweighed by any countervailing benefits to consumers or competition.

121.    Bank of America's prohibited business practices are likely to continue.

122.    Plaintiffs and members of the Class have standing to pursue this cause of action because they suffered injury in fact and lost money as a result of Bank of America's misconduct described herein.

123.    Furthermore, Plaintiffs and the Class seek restitutionary disgorgement from Bank of America and public injunctive relief prohibiting Bank of America from engaging in the unlawful, unfair, and/or fraudulent conduct alleged herein.

124.    Plaintiffs and members of the Class seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Bank of America's unfair,

unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

WHEREFORE, on Count VIII of this Class and Collective Action Complaint, Plaintiffs and all similarly situated employees demand judgment against Bank of America and prays this Court:

      a.  Certify the state law claim set forth in Count VIII above as a class action pursuant to Fed. R. Civ. P. 23;

      b.  Order Bank of America to account for and restore to Plaintiffs and the Class the compensation unlawfully withheld from him for the four years preceding the filing of this Class and Collective Action Complaint;

      c.  Order Bank of America to identify, locate, and make restitution to affected members of the general public all funds and the value of all things acquired by the acts of unfair competition alleged herein;

      d.  Order Bank of America to cease its unfair, unlawful, and fraudulent practices;

      e.  Order Bank of America to disgorge all illegally obtained monies from failing to pay taxes, state disability insurance premiums, and unemployment taxes obtained by way of its violation of California Business and Professions Code § 17200, et seq., for the four years preceding the filing of this Class and Collective Action Complaint;

      f.  Enter all additional orders necessary under California Business and Professions Code § 17203;

      g.  Award Plaintiffs and the Class attorneys' fees and costs as provided by law; and

h. Award Plaintiffs and the Class such other relief as the Court deems fair and equitable.

Dated:  August 9, 2023                          Respectfully submitted,

*/s/ Jason S. Hartley*
Jason S. Hartley (SBN# 192514)
Jason M. Lindner (SBN# 211451)
**HARTLEY LLP**
101 West Broadway, Suite 820
San Diego, CA 92101
Telephone: 619-400-5822
*hartley@hartleyllp.com*
*lindner@hartleyllp.com*


George A. Hanson, *pro hac vice forthcoming*
Alexander T. Ricke, *pro hac vice forthcoming*
Caleb J. Wagner, *pro hac vice forthcoming*
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:      (816) 714-7100
Facsimile:      (816) 714-7101
hanson@stuevesiegel.com
ricke@stuevesiegel.com
wagner@stuevesiegel.com

*Attorneys for Plaintiffs*